**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MAURICE L. WILLIAMS,**

      **Petitioner,**

                              **Case No. 2:13-cv-1124**

  **v.**                              **Crim. No. 2:08-cr-186(2)**

                                     **Judge Sargus**

**UNITED STATES OF AMERICA,**        **Magistrate Judge King**

      **Respondent.**

**REPORT AND RECOMMENDATION**

Petitioner Maurice L. Williams, a federal prisoner, brings this action to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on Petitioner's motions to vacate, *Motion to Vacate* and *Supplemental Motion*, ECF 1450, 1449, Respondent's *Response,* ECF 1484, Petitioner's traverses, *Traverse,* ECF 1495, *Traverse,* ECF 1496, and the exhibits of the parties.[1] For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the motions to vacate be **DENIED** and that this action be **DISMISSED**.

**Facts and Procedural History**

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> On February 26, 2009, Williams was charged with thirty-two federal drug-related offenses in a superseding indictment along with twenty-eight co-defendants. At trial, more than twenty witnesses testified for the Government regarding Williams's leadership role in an international drug trafficking organization. See R. 1139–48, Trial Transcript. Trial testimony revealed that Williams was involved in cocaine trafficking back in the 1990s. R. 1148, p. 103–04. Williams worked "together as a team" with Kenyatta Powell beginning in 2001. *Id.* at 112. Williams and

---

[1] Petitioner filed a *pro se Motion to Vacate* and *Traverse*, ECF 1450, 1495, and, through counsel, a *Supplemental Motion to Vacate* and *Traverse*, ECF 1449, 1496.

Powell would pool their money to buy cocaine from Albert Bean and sell it to lower-level dealers. *Id*. at 105, 108, 113–15. Before long, Powell introduced Williams to Terrence Pfeiffer so that he could join the cabal. *Id*. at 128. Pfeiffer subsequently introduced Williams to Antonio Carlton, who similarly assumed a role in the organization. R. 1140, p. 397. Williams and Powell jointly assigned drug-related tasks to Pfeiffer and Carlton, *id.*, until Powell went to prison in 2001. R. 1139, p. 131.

Once Powell was in prison, Williams took control of the entire operation. *Id*. at 133. In doing so, Williams supervised numerous additional individuals. To begin, under Williams's business model, Williams supplied other cocaine dealers, such as Kevin Cook, Cheo Greenhow, and Casey Drake, with cocaine on consignment. See R. 1141, p. 665; R. 1144, p. 1150; R. 1142, p. 731–32. Williams also hired multiple people to facilitate the smooth operation of his organization. First, there was Darrell Evans, who was responsible for transporting the cocaine. *See* R. 1141, p. 607–09. Later, when Williams worried that Evans might cooperate with police, Williams hired a woman named Crystal to make drug runs. R. 1144, p. 1156. Ultimately, Williams expanded his operation, and he hired Demetrius Slaughter and Marlon West to help transport the cocaine. R. 1139, p. 153; R. 1144, p. 1060. Kevin Cook, acting on Williams's behalf, also hired Wayne Marshall to help facilitate the cocaine delivery. R. 1143, p. 967–76. This rotating cast of characters facilitated Williams's cocaine and marijuana organization, but Williams also hired individuals exclusively for the purpose of selling marijuana, such as Malcom Ross. R. 1143, 928–32.

Unbeknownst to Williams, the Federal Bureau of Investigation ("FBI") began investigating his organization in January 2008. R. 1148, p. 33. In May, FBI agents received court permission to tap Cook's phone, and by June, additional wiretaps were authorized for a phone number identified in the first wiretap. *Id*. at 37, 44–45. In July, FBI agents executed search warrants at four locations deemed likely to contain evidence of illicit activity, including Williams's residence in Charter Oak. *Id*. at 75.

Several months later, Williams organized a "business" trip to the Mexican border accompanied by six individuals: "Drake, Powell, West, a woman called Purple, Jeff Williams, and a Jamaican associate of Williams named John." Appellee Br. at 16. On February 26, 2009, the grand jury returned a superseding indictment against Williams and his co-defendants. R. 33, *Superseding Indictment*. By March 29, 2009, FBI agents arrested

2

everybody but Williams. R. 1148, p. 77. Williams continued to elude capture until August 2009. *Id.* at 73, 93.

Williams's trial began on March 22, 2010. R. 1148. The jury returned a guilty verdict with respect to 30 counts: operating a CCE in violation of 21 U.S.C. § 848(a); conspiracy to distribute, possess with intent to distribute, and to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846; conspiracy to distribute, possess with intent to distribute, and to distribute more than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846; possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and twenty-five counts of the use of a telecommunications device to facilitate a drug transaction in violation of 21 U.S.C. § 843. Appellant Br. at 2.

On October 14, 2010, the district court sentenced Williams to 25 years' imprisonment on the CCE; five years' imprisonment for the firearm, to be served consecutively with the CCE; and four years on each of the telecommunications charges, to be served concurrently with the CCE. R. 1272, Sentencing Transcript. Williams timely appealed.

On appeal, Williams alleges four errors. First, Williams argues that the district court erred in "failing to instruct the jury that it must unanimously agree on the five individuals that appellant managed, supervised, or organized" during the CCE. Appellant Br. at 1. Second, Williams asserts that the district court "erred in denying Appellant's motion to suppress evidence" seized from the Charter Oak residence (the "residence"). *Id.* Third, Williams contends the district court erred in "denying Appellant's motion to suppress wiretapped communications...." *Id.* Finally, Williams claims that the district court "erred by giving an improper instruction on venue to the jury as to the telecommunications offenses." *Id.* at 2.

*United States v. Williams*, No. 10-CV-4326, 461 Fed.Appx. 483, unpublished, 2012 WL 447413

(6th Cir. Feb. 13, 2012).[2]  On February 13, 2012, the United States Court of Appeals for the Sixth

Circuit affirmed the judgment of this Court.  *Id.*  On November 13, 2012, the United States

---

[2]  The Court vacated Petitioner's convictions on Counts 2 and 3 of the *Superseding Indictment*, which charged him with conspiracy to distribute and possess with intent to distribute over 5 kilograms of cocaine and 50 kilograms or more of marijuana, upon the government's motion that sentence instead be imposed on Count 1.  *Sentencing Transcript,* ECF 1272, PageID# 5882. *See United States v. Schuster,* 769 F.2d 337 (6th Cir. 1985)(conviction under 21 U.S.C. § 846 merges into a CCE conviction under 21 U.S.C. §848).

Supreme Court denied the petition for a writ of *certiorari. Williams v. United States*, - U.S. -, 133 S.Ct. 626 (2012).

The *Motion to Vacate* and *Supplemental Motion to Vacate* were filed on November 12, 2013.   The *Supplemental Motion to Vacate,* ECF 1449, which was filed by counsel, alleges that Petitioner was denied the effective assistance of counsel in connection with his conviction on Count 1 of the *Superseding Indictment* ("the CCE Count" or "Count 1"). Specifically, Petitioner complains that his trial counsel failed to challenge the sufficiency of the CCE Count, failed to move for a bill of particulars prior to trial, and failed to object to a constructive amendment of the CCE Count in the *Superseding Indictment.  Supplemental Motion to Vacate,* PageID# 7066, 7072. Petitioner also asserts the denial of the effective assistance of counsel in connection with his counsel's alleged failure to provide Petitioner transcripts of recorded conversations, failure to argue that those conversations were evidence of only misdemeanors, and failure to request lesser included offense instructions. *Supplemental Motion to Vacate,* PageID# 7077, 7079.  Petitioner also alleges a violation of his Sixth Amendment right in connection with the sentence imposed on the CCE Count. *Id*. at PageID# 7075.

The *Motion to Vacate*, ECF 1450, which was filed by Petitioner *pro se,* complains that the jury was not properly instructed, that he was not properly sentenced, and that his trial and appellate counsel were ineffective in failing to object to or raise these issues on appeal. Petitioner also complains that his trial counsel was ineffective because counsel failed to investigate and call certain witnesses. *Id.*

**Standard of Review**

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States, when the trial court lacked jurisdiction, or when the sentence exceeded the maximum sentence allowed by law or is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). Where a non-constitutional error is alleged, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,' " *Davis v. United States*, 417 U.S. 333, 346 (1974)(quoting *Hill v. United States*, 368 U.S. 424, 428–29 (1962)); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). Non-constitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process. Mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

It is well-established that a § 2255 motion "is not a substitute for a direct appeal." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013)(quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained in a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims on direct appeal or (2) that he is "actually innocent" of the crime. *Ray*, 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998))

(internal citations omitted). "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady,* 456 U.S. at 166.

**Ineffective Assistance of Counsel**

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted).  The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner who claims the ineffective assistance of counsel must demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687; *Hale v. Davis*, 512 Fed. App'x 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness." *Poole v. MacLaren*,  547 Fed. App'x. 749, 754 (6th Cir. 2013), *cert. denied,* 135 S. Ct. 122 (2014) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687).  To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 687).  "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

The *Strickland* test also applies to appellate counsel.  *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts*

*v. Lucey*, 469 U.S. 387, 396–97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). Where it is alleged that appellate counsel failed to present a claim on appeal, a court must assess the strength of the claim that appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Prejudice is shown if there is a reasonable probability that, but for his counsel's failings, the defendant would have prevailed on his appeal. *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004)(citation omitted).

The United States Court of Appeals for the Sixth Circuit has articulated a non-exhaustive list of factors to consider when assessing claims of ineffective assistance of appellate counsel:

1. Were the omitted issues significant and obvious?
2. Was there arguably contrary authority on the omitted issues?
3. Were the omitted issues clearly stronger than those presented?
4. Were the omitted issues objected to at trial?
5. Were the trial court's rulings subject to deference on appeal?
6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7. What was the appellate counsel's level of experience and expertise?
8. Did the petitioner and appellate counsel meet and go over possible issues?
9. Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999).

Thus, application of *Strickland* requires that this Court consider the merits of Petitioner's underlying claims in order to determine whether Petitioner has established the denial of the effective assistance of either his trial or his appellate counsel.

**Operating a Continuing Criminal Enterprise**

Petitioner raises various claims of denial of the effective assistance of counsel in connection with his conviction on the CCE Count. Count I of the *Superseding Indictment* specifically charged Petitioner as follows:

> Beginning on or about January 1, 2000, continuing through and including February 26, 2009, the exact dates being unknown to the Grand Jury, in the Southern District of Ohio and elsewhere, the defendant, **MAURICE L. WILLIAMS, aka Papa Joe, aka Boss**, did knowingly, willfully, intentionally and unlawfully engage in a **CONTINUNG CRIMINAL ENTERPRISE,** in that, the defendant, **MAURICE L. WILLAIMS, aka Papa Joe, aka Boss**, did violate 21 US.C. § 841(a)(1), that is distribution and possession with intent to distribute cocaine and marijuana, which violations were part of a continuing series of violations of 21 US.C. § 841(a)(1), in concert with at least five other persons, with respect to whom, the defendant, **MAURICE L. WILLIAMS, aka Papa Joe, aka Boss**, occupied a position of organizer, supervisor or manager, and from which continuing series of violations, the defendant, **MAURICE L. WILLIAMS, aka Papa Joe, aka Boss**, obtained substantial income and resources which the United States is entitled to have forfeited, as they constitute profits, interests in, claims against property and contractual rights affording a source of influence over such **CONTINUNG CRIMINAL ENTERPRISE**, including, but not limited to all profits, interests in, claims against, or contractual rights of any kind that the defendant obtained from or that afforded the defendant a source of influence over said enterprise. In violation of 21 U.S.C. §848(a).

*Superseding Indictment*, ECF 33, PageID# 58-59.

Petitioner asserts that the CCE Count denied him notice of the basis for this charge and thus the opportunity to defend, and subjected him to double jeopardy. Petitioner posits that, because he was not charged individually with unlawfully distributing and possessing with intent to distribute cocaine or marijuana, and because Count 1 does not indicate the type or quantity of drugs involved or the location where predicate offenses occurred, the charge is constitutionally

inadequate.  Petitioner asserts that the prosecution illegally applied a "shotgun approach" to establish guilt, which was particularly prejudicial to Petitioner in light of his counsel's failure to request a bill of particulars.  *Supplemental Motion to Vacate*, ECF 1449, PageID# 7070-72.  In a related allegation, Petitioner asserts that the government constructively amended Count 1 by relying on uncharged predicate offenses, particularly in view of jury instructions that permitted consideration of and conviction for unspecified predicate acts.  *Id.* at PageID# 7073-74.  In addition, Petitioner claims that his conviction violates *Richardson v. United States*, 526 U.S. 813 (1999), which requires that a CCE conviction be based on a jury's unanimous agreement that defendant committed not only a "continuing series of violations," but also the specific violations that make up that "continuing series."  Petitioner complains that his defense counsel failed to request jury instructions that would have required a unanimous verdict on the underlying predicate acts, and that neither his trial counsel nor appellate counsel raised these issues.  The Court finds none of Petitioner's arguments in this regard to be persuasive.

Due process requires that an indictment contain the elements of the offense charged, provide notice of the charges, and protect a defendant against double jeopardy. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *Russell v. United States*, 369 U.S. 749 (1962)). Generally, an indictment is sufficient if it sets forth the words of the statute itself, so long as the statute itself adequately states all the elements of the offense.  *United States v. Paulino*, 935 F.2d 739, 749 (6th Cir. 1991). A CCE indictment is sufficient if it sets forth each element of the CCE offense and states the specific time frame in which the predicate acts occurred, even if those predicate acts are not specified. *Id.* at 749.  Some circuit courts of appeals have held that a CCE indictment is sufficient where the predicate offenses are alleged in other counts of the indictment. *United States v. Staggs*, 881 F.2d 1527, 1530 (10th Cir. 1989); *United States v. Moya-*

*Gomez,* 860 F.2d 706, 752 (7th Cir. 1988); *United States v. Becton*, 751 F.2d 250, 256-57 (8th Cir. 1984). *See also United States v. Alvarez–Moreno*, 874 F.2d 1402, 1408, 1410–11 (11th Cir.1989) (CCE indictment sufficient when alleging offense in language of statute); *United States v. Amend,* 791 F.2d 1120, 1125 (4th Cir. 1986) (indictment sufficient although not alleging five individuals with whom defendant acted in concert); *United States v. Sterling*, 742 F.2d 521, 526 (9th Cir.1984) (no legal requirement that specific violations underlying series be listed in indictment); *United States v. Johnson,* 575 F.2d 1347, 1356 (5th Cir.1978) (indictment sufficient because it charged in the words of the statute that the defendant and others had participated in a continuing criminal enterprise); *United States v. Sperling*, 506 F.2d 1323, 1344 (2d Cir.1974) (indictment adequate for preparation of defense and avoidance of double jeopardy although not listing five individuals with whom defendant acted in concert or violations underlying the charged series).

The CCE Count tracks the language of the statute. It alleges that the offense occurred in the "Southern District of Ohio and elsewhere," identifies all essential elements of the charge and refers to a "continuing series" of drug offenses, *i.e.,* "distribution and possession with intent to distribute cocaine and marijuana," that occurred between January 2000 and February 2009. Moreover, other counts of the *Superseding Indictment* charged conspiracies to commit drug trafficking offenses as well as substantive drug offenses that allegedly occurred in the Southern District of Ohio during this time period. The CCE Count therefore charged all the essential elements of a CCE offense and put Petitioner on notice that the government intended to prove drug trafficking conspiracies and at least three drug violations during the specified time period. Thus, the Court concludes that Count 1 of the *Superseding Indictment* was constitutionally sufficient. *See United States v. Burns,* 298 F.3d 523, 535 (6th Cir. 2002). It follows that

Petitioner's counsel were not ineffective by failing challenge Count 1 as constitutionally insufficient.

The record likewise fails to establish that counsel performed in a constitutionally ineffective manner by failing to raise an issue regarding constructive amendment of the *Superseding Indictment.* A constructive amendment occurs when "the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003) (citing *Stirone v. United States*, 361 U.S. 212 (1960)). A constructive amendment is considered to be *per se* prejudicial and reversible error. *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007)(citing *United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000)).

The Court concludes that the offense charged in Count 1 of the *Superseding Indictment* was not constructively amended. The government was not required to separately charge Petitioner with unlawfully distributing and possessing with the intent to distribute cocaine or marijuana in order to establish a violation of 21 U.S.C. § 848(c). *See Staggs*, 881 F.2d at 1530 (and cases cited therein). Moreover, the government did not constructively amend the *Superseding Indictment* when it presented evidence establishing the elements of the CCE offense charged in Count 1. Moreover, in order to establish Petitioner's violation of the other charges against him (*i.e.,* the drug trafficking conspiracy charges, the gun charge and the use of a telecommunications device charges), the government was required to prove that Petitioner committed those offenses in connection with the distribution and/or possession with intent to distribute cocaine and marijuana. In short, there was no constructive amendment of Count 1, and

11

the Court concludes that Petitioner's counsel did not perform in a constitutionally ineffective manner in failing to raise this issue.

Petitioner also contends that effective counsel would have requested a bill of particulars. A defendant in a federal prosecution may request a bill of particulars to supplement an information or indictment that is insufficiently specific. Fed. R. Crim. P. 7(f). The function of a bill of particulars is to "minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes.'" *United States v. Crayton,* 357 F.3d 560, 568 (6th Cir. 2004)(quoting *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993)). A defendant is not entitled to a bill of particulars where, for example, other charges in the indictment and information provided during the course of discovery offer sufficient detail to enable the defendant to prepare a defense, prevent prejudicial surprise at trial, and preclude a second prosecution for the same crimes. *United States v. Musick,* 291 Fed. Appx. 706, 724 (6th Cir. 2008). *See also United States v. Butler*, 885 F.2d 195, 199 (4th Cir. 1989)(citing *United States v. Hawkins*, 661 F.2d 436, 451–52 (5th Cir. 1981); *United States v. Zavala*, 839 F.2d 523 (9th Cir.1988)).  In the case presently before the Court, the *Superseding Indictment* adequately apprised Petitioner of the charges against him and afforded the opportunity to plan his defense accordingly. Therefore, the failure by Petitioner's counsel to request a bill of particulars did not constitute ineffective assistance.

Petitioner argues that counsel should have challenged the *Superseding Indictment* as duplicitous – or, more precisely, multiplicitous - because multiple predicate acts supported the CCE conviction. *Motion to Vacate*, ECF 1450, PageID# 7092.  A duplicitous or multiplicitous indictment is one that charges separate offenses in a single count. *United States v. Blanford*, 33 F.3d 685, 699 n. 17 (6th Cir. 1994)(citing *United States v. Duncan,* 850 F.2d 1104, 1108 n. 4 (6th

Cir. 1988)).  "The rules about. . . duplicity are pleading rules, the violation of which is not fatal

to an indictment." *See United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981).

> The overall vice of duplicity is that the jury cannot in a general
> verdict render its finding on each offense, making it difficult to
> determine whether a conviction rests on only one of the offenses or
> on both. Adverse effects on a defendant may include improper
> notice of the charges against him, prejudice in the shaping of
> evidentiary rulings, in sentencing, in limiting review on appeal, in
> exposure to double jeopardy, and of course the danger that a
> conviction will result from a less than unanimous verdict as to each
> separate offense.

*Id.*  "The test announced most often in the cases is that offenses are separate if each requires

proof of an additional fact that the other does not."  *United States v. Davis*, 306 F.3d 398, 415

(6th Cir. 2002)(citations omitted.)  "It is not duplicitous to allege in one count that multiple

means have been used to commit a single offense."  *United States v. Damrah*, 124 Fed.Appx.

976, 981, unpublished, 2005 WL 602593 (6th Cir. March 15, 2005)(referring to Fed. R. Crim. P.

7(c)(1).[3])  Further, the Court instructed the jury that, in order to find Petitioner guilty of the CCE

Count, it must unanimously agree not only that Petitioner "committed some continuous series of

violations, but also about which specific violations make up that continuous series."  *Trial*

---

[3] Rule 7(c) of the Federal Rules of Criminal Procedure provides in relevant part:

    (c) Nature and Contents.

    (1) In General. The indictment or information must be a plain, concise, and definite written
    statement of the essential facts constituting the offense charged and must be signed by an
    attorney for the government. It need not contain a formal introduction or conclusion. A count
    may incorporate by reference an allegation made in another count. A count may allege that
    the means by which the defendant committed the offense are unknown or that the defendant
    committed it by one or more specified means. For each count, the indictment or information
    must give the official or customary citation of the statute, rule, regulation, or other provision
    of law that the defendant is alleged to have violated. . . .

    (2) Citation Error. Unless the defendant was misled and thereby prejudiced, neither an error in a
    citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse
    a conviction.

*Transcript, Vol. VIII,* ECF 1146, PageID# 4620. "In other words, you must unanimously agree upon which three acts constitute the series of violations." *Id.*

> Where the jury convicts the defendant on three or more charges alleged to be predicate violations supporting the continuing criminal enterprise charge, and the evidence presented clearly establishes that the violations are related to one another, a failure to instruct the jury that it must unanimously agree about which violations constitute the continuing series is harmless. *See Murr,* 200 F.3d at 906–07. Here, the indictment charged Smith with engaging in a continuing criminal enterprise by committing three or more of the other offenses charged in the indictment. The jury unanimously agreed to convict Smith on every charge. All of the other charges are qualifying predicate offenses of a continuing criminal enterprise. *See United States v. Zavala,* 839 F.2d 523, 527 (9th Cir.1988) (unlawful use of a communication facility); *United States v. Davis,* 809 F.2d 1194, 1203 (6th Cir.1987) (possession with intent to distribute); *United States v. Schuster,* 769 F.2d 337, 345 (6th Cir.1985) (conspiracy). Therefore, there is no concern that the jurors may have convicted Smith on the basis of violations for which there was not unanimous agreement. *See Murr,* 200 F.3d at 906. Furthermore, because the government presented substantial evidence that these violations were committed as part of the [ ] operation. . . "no rational jury could unanimously find [the defendant] guilty of the underlying predicate offenses without also unanimously finding that they were related to each other." Id. at 907 (quoting *United States v. King,* 169 F.3d 1035, 1041 (6th Cir.1999)). Accordingly, any error in the district court's failure to instruct the jury that it must unanimously agree about which violations constitute the continuing series is harmless.

*State v. Smith*, 239 Fed.Appx. 157, 161, unpublished, 2007 WL 2258848 (6th Cir. Aug. 7, 2007). Therefore, counsel's failure to challenge the jury instructions on this basis, or to request special verdict forms indicating the nature of the acts establishing Petitioner's guilt likewise fails.

Finally, Petitioner's conviction on Count 1 of the *Superseding Indictment* does not violate *Richardson v. United States*, 526 U.S. 815. In *Richardson,* the United States Supreme Court held "that a jury must agree unanimously that a defendant is guilty of each of the specific

14

violations that together constitute the continuing criminal enterprise." *See Dodd v. United States*, 545 U.S. 353 (2005). Here, the jury unanimously convicted Petitioner on all of the other charges against him involving the underlying predicate acts. Thus, the jury necessarily unanimously agreed to all of the same three (at least) felonies constituting the predicate offenses underlying the CCE Count. In any event, the government need not have filed separate charges of distribution and possession with intent to distribute cocaine and marijuana in order to sustain Petitioner's conviction on Count 1. "To establish the required predicate, the fact of the offense rather than a conviction is all that is necessary." *United States v. Ospina,* 18 F.3d 1332, 1336 (6th Cir. 1994)(conviction under 18 U.S.C. § 924(c) can be imposed in the absence of any conviction of an underlying drug offense)(citations omitted).

> **Possession of a Firearm in Furtherance of a Drug Trafficking Crime; Using a Communication Facility in Facilitating the Commission of a Drug Transaction**

Petitioner, in his *pro se* pleading, raises the same or similar claims in connection with his convictions on Count 91 of the *Superseding Indictment*, which charged him with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and on Counts 21, 53, 55, 59-65, 67, 69-80, 87-90, and 93, which charged him with using a communication facility in facilitating the commission of a drug transaction, in violation of 21 U.S.C. § 843(b). *Motion to Vacate*, ECF 1450.

Count 91 of the *Superseding Indictment* charged Petitioner with the knowing possession of a firearm in violation of 18 U.S.C. § 924(c)(1)(A), *i.e.,* "a CZ, 40 caliber pistol, serial number A6292, in furtherance of a drug trafficking crime, that is: conspiracies to possess with the intent to distribute and to distribute marijuana and cocaine, . . . and operating a continuing criminal enterprise. . . ." *Id.* at PageID# 113. The *Superseding Indictment* also charged Petitioner with

15

numerous counts of violation of 21 U.S.C. § 843(b) by the knowing use of "a communication facility, that is a telephone, in committing or in causing or facilitating the commission of . . . distribution and possession with intent to distribute cocaine and marijuana, . . . and conspiracies to distribute and possess with intent to distribute cocaine and marijuana. . . ." *See, e.g.,* Count 21, *Superseding Indictment,* PageID# 70. Petitioner argues that his conviction on these counts must be vacated because multiple predicate offenses support the offenses charged, and because the verdict forms failed to specify the basis for the jury's verdict. *Motion to Vacate*, ECF 1450, PageID# 7089-95. Petitioner characterizes the *Superseding Indictment* as duplicitous because it permits convictions without unanimity on underlying predicate acts. *Traverse*, ECF 1496, PageID# 7238-40. Noting that, at sentencing, the Court vacated his conspiracy convictions on Counts 2 and 3 of the *Superseding Indictment,* Petitioner argues that his convictions under 18 U.S.C. § 924(c) and 21 U.S.C. § 843 must also be vacated. *Motion to Vacate*, ECF 1450, PageID# 7094-95.

Petitioner cites *United States v. Anderson*, 59 F.3d 1323 (D.C. Cir. 1995), and *United States v. Atcheson*, 94 F.3d 1237 (9th Cir. 1997) in support of his argument. *Id.* at PageID# 7089. However, neither case supports this claim. Both *Anderson* and *Atcheson* involved a single predicate offense in support of multiple charges of violations of 18 U.S.C. § 924(c). *Anderson*, 59 F.3d at 1324; *Atcheson,* 94 F.3d at 1247. Here, by contrast, Petitioner complains that multiple predicate offenses supported a single charge and conviction. The United States Court of Appeals for the Sixth Circuit has "upheld multiple convictions and sentences under 18 U.S.C. § 924(c)(1) so long as such convictions are based on separate predicate acts." *United States v. Angeles*, 2012 WL 1940344, at *6-7 (6th Cir. May 30, 2012)(quoting *United States v. Graham*, 275 F.3d 490, 519-20 (6th Cir. 2001)). Further, for the reasons already discussed in relation to Count 1 of the

*Superseding Indictment*, Petitioner's remaining claims likewise fail. The *Superseding Indictment* provided Petitioner notice of the charges against him and those charges tracked the language of the statutes at issue. *See Paulino,* 935 F.2d at 749. Petitioner stands convicted on all charges included as predicate acts for his convictions under 21 U.S.C. § 843(b) and 18 U.S.C. § 924(c), so the jury necessarily found him guilty of each of the underlying predicate acts. Moreover, as previously discussed, "[i]t is not duplicitous to allege in one count that multiple means have been used to commit a single offense." *United States v. Damrah*, 124 Fed.Appx. at 981. Petitioner has failed to establish the denial of the effective assistance of counsel in connection with his counsel's failure to challenge his convictions under 18 U.S.C. § 924(c) and 21 U.S.C. § 843.

**Sentencing**

Referring to *Southern Union Co. v. United States*, -- U.S. --, 132 S.Ct 2344 (2012), Petitioner alleges that his conviction and sentence on Count 1 violates *Blakely v. Washington*, 542 U.S. 296 (2004), and *Alleyne v. United States*, -- U.S. --, 133 S.Ct. 2151 (2013), and that his attorney performed in a constitutionally ineffective manner by failing to raise this issue. *Supplemental Motion*, ECF 1449, PageID# 7075-77. Specifically, Petitioner complains that his attorney should have demanded that exact dates be established in connection with the CCE Count. *Id.*

In *Blakely*, the United States Supreme Court extended its holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

> *Apprendi* had held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. *Blakely* explained "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict

> or admitted by the defendant." *Blakely*, 542 U.S. at 303, 124 S.Ct.
> 2531 (emphasis in original).

*Thompson v Warden, Belmont Correctional Inst.,* 598 F.3d 281, 286 (6th Cir. 2010).  In *Alleyne,*

the Supreme Court extended *Apprendi* to mandatory minimum sentences, and held that any fact

that serves to increase a mandatory minimum term must be considered an "element" of the

offense and must be submitted to the jury and proven beyond a reasonable doubt.  *Alleyne*, 133

S.Ct. at 2158 (Thomas, J., plurality opinion).[4]  In *Southern Union Co.,* the defendant corporation

was found guilty of unlawfully storing liquid mercury.  Verdict forms indicated that the violation

took place on the dates alleged in the indictment, *i.e.*, "on or about September 19, 2002 to

October 19, 2004."  *Id.* at 2349.  The amount of fine to be imposed was determined by the

number of days on which the violation took place.  *Id.*  Applying *Blakely* and *Alleyne,* the

Supreme Court held that the calculation of a criminal fine is limited to the facts found by the

jury's verdict or defendant's admissions. Petitioner argues that the reasoning of *Southern Union*

applies to this case.  He specifically contends that, because Count 1 of the *Superseding*

*Indictment* did not allege specific dates on which the continuing criminal enterprise took place,[5]

his conviction on the CCE Count is limited to but a single day, thereby calling into question the

legality of his conviction and sentence in this case.  *Supplemental Motion*, ECF 1449, PageID#

7076.

This Court is not persuaded.  The Supreme Court has not applied the reasoning of *Blakely*

in the manner Petitioner attempts to do here, and Petitioner has referred to no court that has done

so. Furthermore, the continuing criminal enterprise statute, 21 U.S.C. § 848, requires proof – not

---

[4] The Supreme Court has not held that *Alleyne*, decided after the date of the Supreme Court's denial of Petitioner's petition for a writ of *certiorari*, is to be applied retroactively to cases on collateral review.  The United States Court of Appeals for the Sixth Circuit has held that it does not.  *In re Mazzio*, No. 13–2350, – F.3d –, 2014 WL 2853722, *2–3 (6th Cir. June 24, 2014).
[5] As noted *supra*, Count 1 of the *Superseding Indictment* referred to the period "[b]eginning on or about January 1, 2000, continuing through and including February 26, 2009, the exact dates being unknown to the Grand Jury. . . ." *Superseding Indictment*, ECF 33, PageID# 58.

of a particular action on a particular date – but rather proof of a "continuing series of violations." 21 U.S.C. § 848(a)(2).     The jury found beyond a reasonable doubt that Petitioner committed this element of the offense charged.   Moreover, the length of time over which Petitioner committed this offense did not serve to increase the penalty imposed.   Thus, as it relates to his claim that he was denied the effective assistance of counsel in this regard, Petitioner has failed to establish either of the *Strickland* prongs of ineffectiveness.

**Transcripts of Recordings**

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to "provide [Petitioner] with copies of the transcripts of the wiretapped conversations. This, in turn, prevented [Petitioner] from reviewing the conversations and alerting his attorney to the fact that the conversations might well have only given rise to misdemeanor offenses that could not trigger the CCE [C]ount." *Supplemental Motion*, ECF 1449, PageID# 7077-78.[6]

This claim plainly lacks merit.  Nothing in the record indicates that defense counsel was denied access to the content of the recorded conversations, and counsel was free to make strategic decisions supporting an adequate defense, as he did in this case.

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. *See United States v. Decoster*, [624 F.2d 196, 208 (D.C.Cir. 1976)]. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth

---

[6] The Court denied Petitioner's *Motion to Suppress* wiretap communications.  *Opinion and Order*, ECF 855.

> Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

*Strickland*, 466 U.S. at 689.

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana, supra*, 350 U.S.[91,] 101, 76 S.Ct., at 164 [(1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *See* Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases,* 58 N.Y.U.L.Rev. 299, 343 (1983).

*Id.* at 689-690.

Moreover, the record does not establish that the performance of Petitioner's counsel in this regard was deficient or that Petitioner was thereby prejudiced. Petitioner was presumably familiar with conversations in which he participated. Moreover, the record reflects substantial evidence of Petitioner's guilt. Petitioner is alleged to have participated in drug operations spanning the course of more than nine years and which resulted in significant profits. Petitioner lived a "substantial lifestyle," had no legitimate employment, and filed no tax returns.

*Sentencing Transcript*, ECF 1272, PageID# 5872-73. Evidence presented at trial included the testimony of various cooperating witnesses and drug couriers who picked up kilogram quantities of drugs from different cities at Petitioner's behest.  PageID# 5872.

This claim is without merit.

**Jury Instructions on Lesser Included Offense**

Petitioner alleges that he was denied the effective assistance of counsel because his trial attorney failed to request a jury instruction on conspiracy to distribute controlled substances, a lesser included offense of the CCE Count.  *Supplemental Motion*, ECF 1449, PageID# 1769-70. Had counsel done so, Petitioner maintains, he might have secured a lighter sentence.

A criminal defendant is entitled to an instruction on a lesser included offense "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208 (1973).  Although a drug conspiracy is a lesser included offense of CCE, *Jeffers v. United States*, 432 U.S. 137, 155-56 (1997); *see also Rutledge v. United States*, 517 U.S. 292 (1996); *United States v. Davis*, 300 Fed.Appx. 393, 398, unpublished, 2008 WL 4899468 (6th Cir. Nov. 12, 2008), the record in this action – which includes substantial evidence of every element of the CCE Count – did not warrant a lesser included offense instruction. Indeed, the jury was instructed on both the conspiracy charges against Petitioner as well as the CCE Count, and convicted Petitioner on all charges against him. Petitioner's counsel did not perform in a constitutionally ineffective manner in failing to request a lesser included offense instruction.

**Failure to Call Certain Persons as Defense Witnesses**

Petitioner alleges that he was denied the effective assistance of counsel because his trial attorney failed to call as defense witnesses Antwan Lewis and Horace Dickens, who would allegedly have testified that authorities had framed Petitioner and were exaggerating his involvement in drug operations. *Motion to Vacate*, PageID# 7095-96.  According to Petitioner, he advised counsel prior to trial that Lewis would testify that authorities had attempted to persuade Lewis to testify falsely against Petitioner, and that Dickens would testify that police had harassed Petitioner.  Petitioner represents that his counsel responded that Lewis did not want to assist Petitioner's defense and that Dickens "would be close to impossible to track . . . down." *Id.* at PageID# 7097.  In support, Petitioner has attached the 2013 declaration of Antwan Lewis, also a federal prisoner, in which he states that a law enforcement officer and one of the prosecutors in this case tried to induce him to frame Petitioner and, further, that Lewis had never been contacted by Petitioner's trial counsel.  *Id.*, Exhibit 5, *Sworn Statement and Affidavit of Antwan Lewis,* PageID# 7111-12. Petitioner also proffers what he identifies as a letter from one Darrell Evans, a co-defendant who testified against Petitioner*, id.,* Exhibit 6, PageID# 7115-17, and which Petitioner contends establishes that Evans lied.  *Traverse*, ECF 1495, PageID# 7234. Petitioner offers nothing of Dickens' whereabouts, either at the time of Petitioner's trial or thereafter.

"Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland,* 466 U.S. at 689.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.

> "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a

> reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

. An attorney's failure to investigate and call a witness can constitute the ineffective assistance of counsel where such testimony would have resulted in a reasonable probability of acquittal. *Towns v. Smith*, 395 F.3d 251, 258–60 (6th Cir. 2005).  Petitioner has not carried his burden of establishing that his trial counsel was ineffective  in this regard. Nothing in the record supports Petitioner's claim that Dickens was available at the time of Petitioner's trial or would have assisted Petitioner's defense.  Moreover, nothing in the purported Evans writing establishes that Evans lied at trial.   Further, trial counsel's decision not to call Lewis as a defense witness, even assuming that Lewis had been willing to assist in Petitioner's defense, was not an unreasonable strategic decision:  at the time of Petitioner's trial, Lewis was serving a ten (10) year sentence in federal prison, having been convicted in 2008 of a drug trafficking offense. *See United States of America v. Antwan L. Lewis*, 2:07-cr-223(2) (S.D. Ohio). His testimony would likely have been received with great skepticism and his declaration, executed years after the fact, does not provide the kind of evidence that would have called into doubt Petitioner's guilt of the charges against him.   Petitioner's claim in this regard is without merit.

### Prosecutorial Misconduct

Petitioner also alleges, in a footnote in Petitioner's *pro se Motion to Vacate*, that his trial attorney was ineffective because he did not pursue a conflict of interest on the part of one the prosecutors in his case in connection with the prosecutor's prior association and friendship with Darrell Evans and "Patrick 'Batman' Brooks," a police officer.  *Motion to Vacate*, ECF 1450,

PageID# 7099, n.4. Petitioner also complains that Respondent did not expressly address this allegation. *Traverse,* ECF 1495, PageID# 7234. Petitioner did not raise the issue as an independent claim for relief, and the Court does not regard a footnote in lengthy pleadings as an adequate method of asserting a separate claim. Moreover, the record offers no support for Petitioner's suggestion of wrongdoing on the part of the prosecution. Further, an evidentiary hearing is not warranted where, as here, the record conclusively establishes that Petitioner is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003).

For all the foregoing reasons, the Magistrate Judge concludes that Petitioner has failed to establish the denial of the effective assistance of trial or appellate counsel under the standard set forth in *Strickland*.

**Recommended Disposition**

Whereupon, the Magistrate Judge **RECOMMENDS** that the *Motion to Vacate*, ECF 1450, and the *Supplemental Motion*, ECF 1449, be **DENIED** and that this action be **DISMISSED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

*s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
June 23, 2015
